UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

Wayne Gillman,                        :

                  Plaintiff,          :

            v.                        :

Inner City Broadcasting              :
Corp.,                                :

                  Defendant.          :
------------------------------x

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  9/18/09
```

08 Civ. 8909 (LAP)

MEMORANDUM AND ORDER

LORETTA A. PRESKA, Chief United States District Judge

    Plaintiff Wayne Gillman ("Plaintiff") brings this
action alleging that the Defendant Inner City Broadcasting
Corp. ("Defendant" or "the Company") discriminated against
him based on age and sex, and retaliated against him for
complaining about the alleged discrimination.  Plaintiff
asserts federal claims under Title VII of the Civil Rights
Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and
the Age Discrimination in Employment Act, 29 U.S.C. § 621
et seq. ("ADEA"), and state claims under New York State
Executive Law § 290 et seq. ("NYSHRL"), and New York City
Human Rights Law § 8-101 et seq. ("NYCHRL").

    Defendant now moves to dismiss Plaintiff's Complaint,
pursuant to Federal Rules of Civil Procedure 12(b)(1) and
(6).  [See dkt. no. 2].  Plaintiff opposes the motion and,
in the alternative, seeks leave to amend his Complaint.

For the reasons set forth herein, Defendant's Motion is GRANTED in part and DENIED in part.  Plaintiff's request to amend his Complaint is GRANTED.

I.  BACKGROUND

The following facts are derived from Plaintiff's Complaint and the attachments thereto.[1]  All material facts and reasonable inferences are drawn in favor of Plaintiff. Plaintiff, a resident of Bronx County, New York, worked as a News Director and News Anchor for Defendant, a corporation organized under the laws of the State of New York, for approximately thirty years.  Plaintiff is male and was 57 years old at the time of his termination.

---

[1] The Complaint is essentially devoid of factual allegations.  Instead, Plaintiff attaches to the Complaint an informal letter, addressed to the Chairman of the Company, describing the circumstances leading up to Plaintiff's termination (the "Complaint Letter"), and a table listing thirteen other individuals terminated by the Company (the "Complaint Table").  In considering a Rule 12(b)(6) motion, a court may review attachments to a complaint and documents relied on by a Plaintiff. See Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).

Plaintiff submitted additional affidavits during the course of the motion to dismiss briefing, but they have not been considered because doing so would convert the motion to dismiss into one for summary judgment. See Fed. R. Civ. P. 12(d).  The parties have agreed that the present motion is properly presented as a motion to dismiss. [See dkt. no. 9.]

The factual circumstances surrounding Plaintiff's claim of age discrimination are murky. The Complaint Letter states that "Charles Warfield, the Chief Operating Officer of ICBC [] adopted a policy and practice of replacing long term employees regardless of their dedication and competence with new hires." (Complaint Letter at 2.) The Complaint Letter also suggests that the individual who replaced Plaintiff had only seven years experience with the company. Finally, according to the Complaint Table, during an unspecified period of time Defendant terminated thirteen individuals who were forty years old or older.

The factual circumstances surrounding Plaintiff's claim of sexual harassment are described in more detail. Plaintiff contends that Cheryl Sutton, a member of the Defendant's Board of Directors and sister of Pierre Sutton, the Chairman, expressed an unreciprocated romantic interest in Plaintiff. In or around 1993, Plaintiff complained to Pierre Sutton about Cheryl Sutton's advances, whereupon Pierre Sutton "resolve[d]" the situation to Plaintiff's satisfaction.[2] At around that time, Plaintiff signed a

---

[2] The Complaint Letter does not specify the nature of Cheryl Sutton's advances or the actions taken by Mr. Sutton at that time.

3

release promising not to sue Defendant or Cheryl Sutton.
(Complaint Letter at 3.)

However, beginning sometime after that episode, on
several occasions Cheryl Sutton asked Plaintiff to work
late into the evening when other employees would not be
present in the office. Additionally, in the summer of
2006, Cheryl Sutton "pressured [Plaintiff] to travel with
her to Asbury Park to spend the day together while she
sought out a summer rental," and presumably Plaintiff
complied. Subsequently, Cheryl Sutton again "strongly
urged" Plaintiff to accompany her to Asbury Park for an
overnight stay, but Plaintiff declined the invitation.
(Complaint Letter at 4.)

In June 2007, Plaintiff experienced health problems
and he took an approved leave of absence from the company.
During that time, Cheryl Sutton invited Plaintiff to lunch
and gave Plaintiff a bicycle, apparently out of concern
that Plaintiff needed more exercise. Cheryl Sutton also
invited Plaintiff to travel to Martha's Vineyard and other
destinations with her. Plaintiff declined those
invitations. (Complaint Letter at 4.)

Sometime in late 2007, Plaintiff told Cheryl Sutton
"in no uncertain terms" that her conduct had become
offensive and unacceptable. At around that time, Plaintiff

4

contacted Pierre Sutton about returning to work, but he did not respond to Plaintiff's correspondence or telephone calls.   In February 2008, a representative of the Company informed Plaintiff that he would be terminated.   On March 12, 2008, Plaintiff was terminated.[3]

On April 7, 2008 Plaintiff's attorney wrote Pierre Sutton a letter complaining of the above described events. On April 17, 2008, Plaintiff's attorney wrote another letter to Pierre Sutton requesting a response.   Apparently, none was provided.

On or about June 7, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination and sexual harassment. Notably, although he had the option to do so on the EEOC complaint form, Plaintiff did not complain of discrimination based on retaliation.   On or about June 16, 2008, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") alleging age

_____

[3] According to the Complaint and the first page of the Complaint Letter, Plaintiff was terminated on March 12, 2008.   However, the third page of the Complaint Letter states that Plaintiff was terminated on March 12, 2004.   In light of all the other factual allegations of post-2004 employment with the Company contained in the Complaint Letter, that date appears to be a typographical error and it will be ignored as immaterial.   In any event, Plaintiff will have the opportunity to correct it if and when he files an amended complaint.

5

discrimination and sexual harassment. On the NYSDHR form, Plaintiff stated that he was retaliated against for "filing a discrimination case."

On October 2, 2008, Plaintiff received a right to sue letter from the EEOC. Plaintiff initiated this action on October 17, 2008. On December 31, 2008, the SDHR issued an order titled "Determination and Order of Dismissal for Administrative Convenience."[4]

## II.  DISCUSSION

## A.  Subject Matter Jurisdiction and the Rule 12(b)(1) Motion

Plaintiff amasses a number of grounds for this Court's subject matter jurisdiction:  42 U.S.C. § 2000e-5 (Title VII enforcement jurisdiction), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and presumably 28 U.S.C. § 1367 (supplemental jurisdiction). Because several of the claims asserted in this action arise under the laws of the United States and do not appear to be frivolous, subject matter jurisdiction is proper, at least pursuant to 28 U.S.C. § 1331. The Court will exercise pendent jurisdiction over

_____

[4] The Court takes judicial notice of the SDHR Order; it was provided during the course of the motion to dismiss briefing in response to the Court's request.

6

all plausible state claims arising out of the factual circumstances alleged in this action. See 28 U.S.C. § 1357.

However, Defendant has brought a Rule 12(b)(1) motion contending that the Court lacks subject matter jurisdiction over Plaintiff's NYHRL and NYCHRL claims because N.Y. Exec. Law § 297(9) (McKinney 2000) confers a cause of action for employment discrimination unless the Plaintiff has filed a complaint with the NYSDHR.[5]  Defendant cites Chudnovsky v. Prudential Sec., Inc., No. 98 Civ. 7753, 2000 WL 1576876, at *4 (S.D.N.Y. Oct. 23, 2000), to support its theory that filing a complaint with the NYSDHR deprives federal courts of subject matter jurisdiction over NYHRL and NYCHRL claims.  Plaintiff counters by pointing out that § 297(9) includes an exception for actions in which the NYSDHR did not adjudicate a complaint but dismissed it for administrative convenience.

As an initial matter, Defendant's argument is improperly presented under the 12(b)(1) motion rubric.[6]  But

---

[5] The parties appear to assume that the city claims are coterminous with the state claims.  Therefore, for purposes of this issue only, the Court assumes that they are.

[6] A state statute cannot deprive a federal court of subject matter jurisdiction.  Accordingly, it appears that Chudnovsky was wrongly decided, to the extent it concluded that § 297(a) "deprives federal courts of subject matter jurisdiction." 2000 WL 1576876, at *4.  Presumably the election of remedies provision of (. . . continued)

7

even if § 297(9) is properly raised on a 12(b)(1) motion, Plaintiff is correct that the § 297(9) exception applies in this action because the NYSDHR dismissed Plaintiff's complaint for administrative convenience. See Moodie v. Federal Reserve Bank of New York, 58 F.3d 879, 882 (2d Cir. 1995) ("An exception [to the § 297(9) rule] is provided when a complaint is dismissed for administrative convenience: a suit may be brought as if a complaint had never been filed."). The Court takes judicial notice of the NYSDHR's Order dismissing Plaintiff's complaint for administrative convenience, and thus, there is no basis for Defendant's argument that Plaintiff's state claims are improperly before this Court.[7]

---

(. . . continued) § 297(9) concerns the viability of a plaintiff's claim, rather than the jurisdiction of federal courts. See Griffith v. Bank of New York, 147 F.2d 899, 904 (2d Cir. 1945) ("[I]t is well settled that state statutes cannot limit the jurisdiction . . . of the federal courts."); see also Clark v. Times Square Stores Corp., 469 F. Supp. 654, 655 (S.D.N.Y. 1979).

[7] To the extent Defendant also contends that this Court lacks jurisdiction over Plaintiff's NYHRL and NYCHRL claims because the NYSDHR did not dismiss Plaintiff's complaint until after this action was initiated, that jurisdictional defect has since been cured, and Plaintiff may assert those claims as related to his federal claims.

## B.   The Rule 12(b)(6) Motion to Dismiss

Defendant moves to dismiss the Complaint on the grounds that (1) Plaintiff failed to state a claim upon which relief may be granted and (2) Plaintiff's claims are time-barred.   I will examine each argument in turn.

### i.   Failure to state a claim

While it is true that for a complaint to state a claim for relief it need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must [also] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."   Id. (internal quotation marks and citations omitted).   "Determining whether a complaint states a

9

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.  Finally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.[8]

The Iqbal plausibility standard applies in conjunction with employment discrimination pleading standards. According to Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002), employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination.  Rather, "a complaint must include . . . a plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Id. at 512 (internal quotation marks and citations omitted); see also Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).  Iqbal was not meant to displace Swierkiewicz's teachings about pleading standards for employment discrimination claims because in Twombly, which heavily informed Iqbal, the Supreme Court

---

[8] Additionally, "[p]articularly important in this case is the well-established principle . . . that we include in [the motion to dismiss] analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001).

explicitly affirmed the vitality of Swierkiewicz. See
Twombly, 550 U.S. at 547 ("This analysis does not run
counter to Swierkiewicz . . . . Here, the Court is not
requiring heightened fact pleading of specifics, but only
enough facts to state a claim to relief that is plausible
on its face."); see also Iqbal, -- U.S. --, 129 S. Ct. at
1953 ("Our decision in Twombly expounded the pleading
standard for all civil actions, and it applies to antitrust
and discrimination suits alike." (internal quotation marks
and citations omitted)).[9]  Accordingly, while a complaint
need not contain specific facts establishing a prima facie
case of employment discrimination to overcome a Rule
12(b)(6) motion to dismiss, it must nevertheless give fair
notice of the basis of Plaintiff's claims, and the claims
must be facially plausible.  With these standards in mind,
I will consider each claim in turn.

---

[9] Additionally, although decided before the Supreme Court's
Iqbal decision, Boykin v. KeyCorp, 521 F.3d 202 (2d Cir.
2008), describes the interrelation of Swierkiewicz and
Twombly and concludes that "the Supreme Court is not
requiring a universal standard of heightened fact pleading,
but is instead requiring a flexible plausibility standard,
which obliges a pleader to amplify a claim with some
factual allegations in those contexts where such
amplification is needed to render the claim plausible." 521
F.3d at 213 (internal quotation marks omitted).

Plaintiff has put Defendant on notice of his hostile

work environment claim and it is facially plausible.[10]

"Title VII prohibits employers from 'discriminat[ing]

against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of

such individual's . . . sex.'" Gregory, 243 F.3d at 691

(quoting 42 U.S.C. § 2000e-2(a)(1)). "The phrase 'terms,

conditions, or privileges of employment' is broad enough to

encompass, and render actionable, an employer's requirement

that an employee 'work in a discriminatorily hostile or

abusive environment,' so long as the discriminatory conduct

at issue is 'severe or pervasive enough to create an

---

[10] For the purposes of this Order, Plaintiff's Title VII and
NYHRL claims shall be considered as one claim of hostile
work environment because they both depend on the standards
developed in the Title VII context. See Reed v. A.W.
Lawrence & Co., Inc., 95 F.3d 1170, 1177 (2d Cir. 1996)
("[S]tate law claims [are considered] in tandem with []
Title VII claims because New York courts rely on federal
law when determining claims under the New York Human Rights
Law."); Zakrzewska v. New School, 598 F. Supp. 2d 426, 431
& n.33 (S.D.N.Y. 2009).

    However, Plaintiff's NYCHRL hostile work environment
claim does not necessarily depend on Title VII standards
and, in fact, most likely depends on city-specific
standards. See Williams v. New York City Hous. Auth., 872
N.Y.S. 2d 27, 31-32, 36-37 (N.Y. App. Div. 2009) ("[A]ll
provisions of the City HRL require[] independent
construction to accomplish the law's uniquely broad
purpose."). In any event, since NYCHRL claims are
construed more broadly than Title VII claims and NYHRL
claims, so long as a plaintiff has made out federal and
state claims, he has in most cases made out a city claim as
well.

12

objectively hostile or abusive work environment.'" Id.
(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21
(1993)).  Accordingly, a plaintiff may establish a hostile
work environment claim by showing either that "a single
incident was extraordinarily severe, or that a series of
incidents were sufficiently continuous and concerted to
have altered the conditions of [his] working environment."
Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62,
69 (2d Cir. 2000).  More specifically, a plaintiff must
show: "(1) that the workplace was permeated with
discriminatory intimidation that was sufficiently severe or
pervasive to alter the conditions of . . . [his] work
environment, and (2) that a specific basis exists for
imputing the conduct that created the hostile environment
to the employer." Petrosino v. Bell Atl., 385 F.3d 210, 221
(2d Cir. 2004) (internal quotation marks omitted); see also
Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  In
considering a hostile work environment claim, the
factfinder may consider factors including "the frequency of
the discriminatory conduct; its severity; whether it is
physically threatening or humiliating, or a mere offensive
utterance; and whether it unreasonably interferes with an
employee's work performance." Harris, 510 U.S. at 23.

In this action Plaintiff has posited enough facts to make out a plausible hostile work environment discrimination claim. The facts alleged in the Complaint Letter are sufficient to make out a plausible claim that Plaintiff was forced to work in an environment where he felt sexually threatened. Plaintiff alleges that at least since 1993, Cheryl Sutton, a member of the Defendant's Board of Directors and sister of the Chairman,[11] made unwanted advances toward Plaintiff in the form of invitations to travel with her, requests to work late when no employees would be in the workplace, and unsolicited gifts. Whether or not those acts actually qualify as discriminatory conduct severe or pervasive enough to create an objectively hostile or abusive work environment is a question to be determined at a later stage of this action. The record reflects that they were sufficiently troubling to Plaintiff to warrant a complaint to the Chairman of the Company in 1993 and in late 2007. And the fact that Plaintiff was terminated relatively soon after complaining to the offending Board Member seems not to be in dispute. Taking Plaintiff's factual allegations as true, Plaintiff suffered an alteration to the conditions of his work

---

[11] At least at this stage of the action, Cheryl Sutton's conduct may be imputed to Defendant.

14

environment.  Accordingly, Plaintiff's allegations present
at least a minimally plausible and articulate
discrimination claim.

As to Plaintiff's age discrimination claim, he fails
to make out a facially plausible claim.[12]  The ADEA makes it
unlawful for an employer "to discharge any individual or
otherwise discriminate against any individual with respect
to his compensation, terms, conditions, or privileges of
employment, because of such individual's age." 29 U.S.C.
§ 623(a)(1).  A claim of age discrimination requires (1)
that a plaintiff demonstrate membership in a protected
class, (2) the plaintiff's qualification for his position,
(3) that the defendant took an adverse employment action
against the plaintiff, and (4) circumstances that support
an inference of age discrimination. Kassner v. 2nd Ave.
Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007);
Galabya v. New York City Bd. of Educ., 202 F.3d 636, 639
(2d Cir. 2000).  The ADEA sets the limit for membership in

---

[12] For the purposes of this Order, Plaintiff's ADEA, NYHRL
and NYCHRL claims shall be considered as one claim of age
discrimination because they all depend on the standards
developed in the ADEA context. See Abdu-Brisson v. Delta
Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)
("Although there are differences between the State HRL, the
City HRL and the federal Age Discrimination in Employment
Act . . . age discrimination suits brought under the State
HRL and City HRL are subject to the same analysis as claims
brought under the ADEA.").

a protected class at age 40. See 29 U.S.C. § 631.  A

plaintiff's qualification for his position is clearly a

fact specific inquiry.  Termination from employment

constitutes an adverse employment action. See Woodman v.

WWOR-TV, Inc., 411 F.3d 69, 77 (2d Cir. 2005).  And for

purposes of creating an inference of age discrimination,

"the protected status of [the plaintiff] is an 'irrelevant

factor' in determining whether replacement by another

employee indicates [the defendant's] age discriminatory

intent.  The 'far more reliable indicator of age

discrimination' is the age discrepancy between the

discharged employee and [his] replacement.  Thus, it is

that discrepancy as to which an employer must have some

knowledge to support an inference of discriminatory

intent." Id. (quoting O'Connor v. Consol. Coin Caterers

Corp., 517 U.S. 308, 312-13 (1996)).  Of course,

replacement by a younger individual is not a sine qua non

for an age discrimination claim, and a plaintiff may rely

on statistical evidence of disparate impact to create the

inference of discrimination. See Abdu-Brisson, 239 F.3d at

467.  But if a plaintiff relies on a disparate impact

theory, "the plaintiff is obliged to . . . 'isolat[e] and

identif[y] the specific employment practices that are

allegedly responsible for any observed statistical

disparities.'" Meacham v. Knolls Atomic Power Laboratory,
-- U.S. --, 128 S. Ct. 2395, 2405 (2008) (quoting Smith v.
City of Jackson, Miss., 544 U.S. 228, 241 (2005)).  "A
plaintiff falls short by merely alleging a disparate
impact, or point[ing] to a generalized policy that leads to
such an impact." Id. (internal quotation marks omitted).

    Here, Plaintiff presents conclusory and irrelevant
facts in support of his age discrimination claim.
Plaintiff alleges that he was replaced by an inexperienced
employee, as opposed to a younger employee.  Allegations
that the Defendant hired inexperienced employees do not
advance an age discrimination claim.  Plaintiff also
contends that the Chief Operating Officer of the Company
"adopted a policy and practice of replacing long term
employees regardless of their dedication and competence
with new hires."  Even assuming such a policy existed, it
would not tend to create an inference of age discrimination
because the replacement of "long term employees" with new
hires of unspecified ages is irrelevant to the question of
whether Defendant took adverse employment actions against
the fired employees based on age.

    Really the only allegations that could possibly
support Plaintiff's age discrimination claim are those
contained in the Complaint Table, listing thirteen

individuals who were forty years old or older at the time
of their termination by the Defendant.  Plaintiff
apparently intends those factual allegations to advance a
disparate impact theory and expects that they will
constitute notice of Plaintiff's statistically-based theory
of age-based terminations.  However, listing thirteen
individuals terminated after reaching the age of forty,
without more information about the reasons for their
termination or specific employment practices by the
Defendant, does not make out a plausible age discrimination
claim.  As noted, merely alleging that a disparate impact
occurred or pointing to a generalized discriminatory policy
is insufficient to make out a plausible age discrimination
claim.  Accordingly, Plaintiff's allegations do not present
a facially plausible employment discrimination claim and
that claim is dismissed.

Finally, Plaintiff has made out a facially plausible
retaliation claim.[13]  Based on the allegations in the
Complaint Letter, Plaintiff apparently intends to advance a
theory that his termination constituted discriminatory
retaliation in response to his complaints about Cheryl
Sutton's advances.  Title VII states that it shall be an

---

[13] As with the other theories, this Court considered the
Title VII, NYHRL and NYCHRL retaliation claims to depend on
the same standards, at least at this stage of this action.

"unlawful employment practice for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  Thus, "Title VII forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." Kessler v. Westchester County Dept. of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006).  In order to make out a claim for retaliation under Title VII a plaintiff must allege facts "sufficient to permit a rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition under Title VII, [2] that the employer was aware of this activity, [3] that the employer took adverse action against the plaintiff, and [4] that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action." Cifra v. GE Co., 252 F.3d 205, 216 (2d Cir. 2001) (internal quotation marks omitted).

   In the Complaint Letter, Plaintiff alleges that in late 2007 Plaintiff complained to Cheryl Sutton, a Board

member, about her unwanted advances and that Plaintiff was
notified of his termination in February 2008. Considering
that Plaintiff has made out a plausible hostile work
environment claim, see supra, these additional factual
allegations, minimal as they might be, are sufficient to
show (1) Plaintiff's opposition to the allegedly
discriminatory treatment, (2) that Defendant was aware of
Plaintiff's opposition--assuming Cheryl Sutton's knowledge
may be imputed to the Company, (3) that Defendant took
adverse action against Plaintiff by terminating him, and
(4) that a retaliatory motive allegedly played a part in
the adverse employment action. This claim for retaliation
is facially plausible.[14]

---

[14] Defendant also contends that the retaliation claim should
be precluded pursuant to the exhaustion requirement of 42
U.S.C. § 2000e-5(f)(1) because Plaintiff did not present it
to the EEOC. Defendant's contention is meritless because
Plaintiff's allegation of retaliation was described in his
attorney's letter submitted to the EEOC, and, in any event,
the retaliation theory was reasonably related to the sex
discrimination claim explicitly marked on the face of the
EEOC complaint. See Mathirampuzha v. Potter, 548 F.3d 70,
76 (2d Cir. 2008) ("The exhaustion requirement is relaxed
under the reasonably related doctrine if, inter alia, the
conduct complained of would fall within the scope of the
EEOC investigation which can reasonably be expected to grow
out of the charge of discrimination." (internal quotation
marks omitted)).

As such, Plaintiff's Title VII-, NYHRL- and NYCHRL-based claims may proceed with respect to the hostile work environment and retaliation theories only.

## ii.   Timeliness of the Claims

Defendant further contends that Plaintiff's hostile work environment claim is time-barred.[15]  A plaintiff must file a charge of discrimination under Title VII within 300 days of the allegedly discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1); see also Williams v. New York City Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006).  Under the state and city human rights laws, a plaintiff must file a claim of discrimination within three years. See N.Y. C.P.L.R. § 214; N.Y.C. Admin Code § 8-502(d); see also Crews v. Trs. of Columbia Univ. in City of New York, 452 F. Supp. 2d 504, 525 n.5 (S.D.N.Y. 2006).

The adverse employment action Plaintiff alleges he suffered was his termination on March 12, 2008.  On or about June 7, 2008, Plaintiff filed a complaint with the EEOC, 87 days after the termination.  And on October 17,

---

[15] Because Plaintiff has failed to make out a facially plausible age discrimination claim, see supra, the Court need not consider Defendant's timeliness arguments with respect to that claim.  Defendant does not contend that Plaintiff's retaliation claim is time-barred.

21

2008, Plaintiff initiated this action, 219 days after the termination. Clearly, Plaintiff's claims are timely.

## C. Leave to Amend

Leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Whether and to what extent leave to amend shall be granted rests within the court's sound discretion. Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, when calculating whether a proposed amendment should be denied as futile, the question is whether it would survive a motion to dismiss under rule 12(b)(6). Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91-92 (2d Cir. 2003).

With respect to Plaintiff's purported age discrimination claim, if he so chooses, Plaintiff shall have 30 days to file an amended complaint setting forth sufficient factual allegations to state a claim upon which relief can be granted, in accordance with this Order. No other amendments shall be permitted.

III.  CONCLUSION

For the reasons set forth herein, Defendant's motion
to dismiss [dkt. no. 2] is GRANTED in part and DENIED in
part.

Defendant's motion to dismiss for lack of subject-
matter jurisdiction is DENIED.  Defendant's motion to
dismiss Plaintiff's hostile work environment claim is
DENIED.  Defendant's motion to dismiss Plaintiff's
retaliation claim is DENIED.  Defendant's motion to dismiss
Plaintiff's age discrimination claim is GRANTED; however,
Plaintiff's motion for leave to amend his complaint [dkt.
no. 7] is GRANTED with respect to his age discrimination
claim only.  The parties shall confer and inform the Court
by letter no later than September 25, 2009 of how they
propose to proceed.

SO ORDERED
Dated:    September  18 , 2009
          New York, New York

LORETTA A. PRESKA, Chief U.S.D.J.

23